United States Court of Appeals
Fifth Circuit

**F I L E D**
July 2, 2009

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 08-30740

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAMES ELLIS ASHFORD

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:08-CR-22

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant James Ellis Ashford challenges the district court's restitution order imposed after he pled guilty to one count of a three count indictment charging him with theft of government funds and a scheme to defraud the United States via mail fraud. Finding no error, we AFFIRM the district court's restitution order.

Ashford was indicted for filing fraudulent claims for disaster relief with the Federal Emergency Management Agency ("FEMA") after Hurricane Katrina.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Count 1 charged him with knowingly stealing more than $1,000 in federal funds by claiming disaster assistance to which he was not entitled between September 14, 2005, and March 31, 2006. Counts 2 and 3 alleged a scheme to defraud the federal government from on or about September 15, 2005, through December 10, 2005,[1] via two instances of mail fraud. On the morning of a scheduled trial, Ashford pled guilty to Count 2 of the indictment without a plea agreement.

At sentencing, the district court ordered that Ashford pay $11,573.11 in restitution, which included the value of the two FEMA checks and an additional $7,215.11 in hotel bills that FEMA improperly paid for Ashford's post-Katrina housing. The hotel bills were not mentioned in the indictment, and they relate to housing expenses from October 2005 through February 2006 – dates exceeding in part the time alleged in Count 2 of the indictment. Ashford claims that the restitution order should be limited to the $4,358 specifically mentioned in the indictment, because some of the hotel expenses were incurred outside the time frame alleged in Count 2.

The legality of a restitution order is reviewed de novo. *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004). If the restitution order is found to be permitted by law, the propriety of the particular restitution award is reviewed for abuse of discretion. *Id.* Under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (2000) ("MVRA"), a defendant is only responsible for paying restitution for the conduct underlying the offense of conviction. *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007). However, "[w]here a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme." *Id.* (quoting *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005)) (internal quotation marks omitted). The restitution for a scheme to defraud is limited to the specific temporal scope of the indictment.

_____

[1] The indictment stated that the "exact dates [are] uncertain."

*Inman*, 411 F.3d at 595. Because there is no written plea agreement in this case and no plea terms are contained in the record, we must look to the actions alleged in the charging document, rather than speculating upon the mutual understanding of the parties, to determine the scope of Ashford's fraudulent scheme. *See Adams*, 363 F.3d at 366.

Ashford was charged with, and pled guilty to, devising and executing "a scheme and artifice to defraud the United States and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises[.]" To accomplish this crime, Ashford was specifically accused of (1) filing a claim for $4,358 in emergency benefits from FEMA; (2) falsely stating that his primary residence was damaged by a hurricane; and (3) committing two instances of mail fraud corresponding to the checks he improperly obtained. We conclude that the conduct that resulted in the receipt of $7,215.11 in hotel payments falls within the temporal scope of this count of conviction.

Ashford is correct that some of the hotel payments reimbursed expenses incurred outside the time frame set forth in Count 2 of the indictment; however, our analysis is not dependent upon the dates Ashford received the benefit of his fraudulent conduct. We consider instead whether the hotel scheme itself was part of the same course of wrongdoing as the acts of conviction and arose out of the false statement regarding damage to his primary residence. *See Wright*, 496 F.3d at 382; *see also United States v. Cothran*, 302 F.3d 279, 289 & n.11 (5th Cir. 2002) ("Although we sometimes have struggled to define the outer bounds of a particular fraudulent scheme, we have focused on the actions alleged in the indictment and their temporal scope."). The record is clear that Ashford committed the same false and fraudulent pretenses, representations, and promises that wrongly established his eligibility for the two emergency benefit checks to also obtain improper payment for his hotel stay. In short, there was but one scheme that led to Ashford's conviction for Count 2, and the restitution

amount correctly reflected losses caused by that scheme. *See United States v. Stouffer*, 986 F.2d 916, 928-29 (5th Cir. 1993). The only conduct resulting in losses occurring after December 10, 2005 was Ashford's continued residence in the hotel; everything else, most notably the planning, preparation, and request for reimbursement, occurred within the dates contained in the indictment. *See Wright*, 496 F.3d at 382 (distinguishing *Inman*, 411 F.3d at 595). The district court was correct to treat the $7,215.11 hotel reimbursement as a loss caused by the offense of conviction, and appropriately included that amount in the restitution ordered pursuant to the MVRA. Accordingly, we AFFIRM the restitution order.